IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CLIFFORD J. HAISMAN                                                                    PLAINTIFF

v.                                          CIVIL NO. 20-5184

KILOLO KIJAKAZI,[1] Acting Commissioner
Social Security Administration                                                         DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Clifford J. Haisman, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed his current application for DIB on October 8, 2018, alleging an inability to work since August 28, 2015,[2] due to his neck, arms, migraines, and depression.  (Tr. 113, 226).  An administrative video hearing was held on November 27, 2019, at which Plaintiff appeared with counsel and testified. (Tr. 29-91).

---

[1] Kilolo Kijakazi, has been appointed to serve as Acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.
[2] Plaintiff, through his counsel, amended his alleged onset date to March 21, 2019. (Tr. 36).

1

By written decision dated January 16, 2020, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 12). Specifically, the ALJ found Plaintiff had the following severe impairments: osteoarthritis in the knees, bilaterally; myositis; obesity; left knee meniscus tear and ACL tear; right knee meniscus tear; degenerative disc disease with radiculopathy; major depression; and somatic symptoms disorder. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant requires the use of a cane for ambulation. The claimant requires the opportunity to alternate between sitting and standing hourly, and the claimant requires work that can be performed while sitting or standing. The claimant can no more than occasionally climb ramps and stairs, and no more than occasionally balance or stoop. The claimant can never climb ladders, ropes or scaffolds, and never kneel, crouch or crawl. The claimant can occasionally reach overhead bilaterally. The claimant can have frequent exposure to extreme cold or vibration, but no exposure to hazardous moving machinery or unprotected heights. The claimant is limited to receiving, comprehending and executing simple, routine tasks. The claimant is limited to no assembly line or piece-rate work, and no more than occasional decision-making.

(Tr. 14-15). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a surveillance system monitor, an inspector, and an addresser. (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, who denied that request on August 5, 2020. (Tr. 1-4). Subsequently, Plaintiff filed this action. (ECF No. 2). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (ECF Nos. 16, 17).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Evidence Presented**:

At the administrative video hearing held before the ALJ on November 27, 2019, Plaintiff, who was forty-eight years of age, testified that he had obtained a high school education and had completed a few college courses. (Tr. 40). Plaintiff's past relevant work consists of work as a motor vehicle assembler, a production assembler, an industrial truck operator, an inventory clerk, and a stock clerk. (Tr. 69-72).

The pertinent medical evidence for the time period in question reflects the following. On December 13, 2018, Dr. Mira Krishnan, a non-examining medical consultant completed a Psychiatric Review Technique assessment opining that Plaintiff has mild limitations with understanding, remembering, or applying information; mild limitations with interacting with others; mild limitations with concentrating, persisting, and maintaining pace; and mild limitations with adapting and managing oneself. (Tr. 118-119). Dr. Krishnan also completed a Mental RFC Assessment opining that Plaintiff was moderately limited in some areas of functioning. (Tr. 123-124).

On December 17, 2018, Dr. B.D. Choi, a non-examining medical consultant, completed a RFC assessment opining that Plaintiff could occasionally lift or carry 10 pounds, frequently lift or carry 10 pounds; could stand and/or walk for a total of 2 hours in an 8-hour workday; could sit about 6 hours in an 8-hour workday; could push or pull unlimited, other than as shown for lift and/or carry. (Tr. 121-123). Dr. Choi further opined Plaintiff requires a cane to ambulate; requires an opportunity to change positions every hour; and requires a sit/stand option defined as work that can be done in both the sitting and standing positions such that a change in position will not cause the worker to go off tasks. Dr. Choi opined Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl; could never climb ladders/ropes/scaffolds; could

occasionally reach overhead, bilaterally; and that visual, communicative, and environmental limitations were not evident.

On March 21, 2019, Plaintiff was seen at the Ozarks Community Hospital Gravette Clinic (Gravette Clinic) to establish care with Dr. Vijay Kannam. (Tr. 622-627). Plaintiff reported chronic depression/anxiety, chronic neck pain with bilateral radiculopathy, hypertension, migraine headaches, and gastroesophageal reflux disease (GERD). Plaintiff requested medication refills. Upon examination, Dr. Kannam found Plaintiff had a normal musculoskeletal inspection; strength; and range of motion, noting pain with range of motion of his left knee. Plaintiff walked with a cane. Plaintiff was prescribed medication and referred to a psychiatrist and psychologist. Plaintiff was to follow-up in a month.

On April 24, 2019, Plaintiff was seen in the Ozarks Community Hospital emergency department for chronic neck pain. (Tr. 595, 597-599, 654-657). Plaintiff reported that prior to arrival he had taken Skelaxin and Imitrex. Plaintiff complained of neck pain, and a headache with photophobia. Plaintiff indicated he recently moved from Michigan; and that he had been out of his Norco for over a month and had been forgetting to take his Meloxicam. An examination revealed mild midline neck tenderness, with mildly limited range of motion. Plaintiff was administered a Toradol injection, diagnosed with chronic neck pain and instructed to continue taking Mobic daily as needed. Plaintiff was advised to follow-up with his primary care physician to discuss his narcotic prescriptions.

On May 2, 2019, Plaintiff underwent x-rays for the right knee that revealed mild osteoarthritis, predominantly involving the medial tibial femoral joint. (Tr. 603). Cervical spine x-rays revealed mild degenerative spondylosis and straightening of cervical lordosis, likely due to muscle spasm. (Tr. 604).

On May 16, 2019, Plaintiff was seen in the Gravette Clinic for a cough, congestion, eye irritation and a sore throat. (Tr. 628-632). Plaintiff thought he might have bronchitis. Upon examination, Amelia Jackson, NP, noted Plaintiff had normal cardiac, neurological, and mental exams but walked with a cane. NP Jackson assessed Plaintiff with an acute sinus infection and prescribed medication.

On June 11, 2019, Plaintiff was seen by Dr. Robert Baker to establish care for pain management. (Tr. 570-574). Plaintiff complained of neck, arm, hip, and knee pain. Plaintiff also reported difficulty sleeping, anxiety/frustration, depression, numbness, weakness, sweating, nausea, and migraines. Upon examination, Dr. Baker noted Plaintiff experienced pain with bilateral palpation of the cervical joints at C3-4, C4-5, and C5-6. Plaintiff reported using a cane. Plaintiff was oriented to person, place, and time; and had normal recent and remote memory. Plaintiff's sensation was noted as decreased to light touch on the right at C6-7. Dr. Baker ordered a MRI of the cervical spine and indicated a cervical epidural steroid injection (CESI) might be recommended. Dr. Baker prescribed Hydrocodone, noting Plaintiff had done very well with the medication in the past.

On June 22, 2019, Plaintiff was seen in the Ozark Community Hospital emergency room for a headache. (Tr. 591-594, 596, 600-602). Plaintiff reported he had taken two doses of Imitrex which normally aborted his headaches. However, a family member interrupted his typical routine by turning on all the lights in the house and making a lot of noise. Plaintiff denied vision changes, confusion, weakness, or neck pain/stiffening. Plaintiff reported his blood pressure was always elevated when he had a headache. Upon examination, Plaintiff was noted to have normal neurological/psychological and motor/sensory exams. Plaintiff was diagnosed with a headache. After receiving a Toradol injection, Plaintiff reported his headache was gone. Plaintiff was

instructed to take Imitrex and Ibuprofen; drink a cup of coffee; and rest in a dark room when he experienced a headache that he called a migraine.

In an undated letter that was received by the Administration on July 2, 2019, Dr. David Tucker, of the Gravette Clinic, opined that Plaintiff was "incapable of performing work related functions." (Tr. 561).

On July 3, 2019, Plaintiff was seen at the Gravette Clinic for a follow-up regarding a migraine headache. (Tr. 648-653). Plaintiff reported he was seen in the emergency room for a migraine following the death of his nephew and increased stress. Dr. Nancy Jones noted Plaintiff suffered from chronic depression and GERD, and was being followed by Dr. Holden. A musculoskeletal examine was normal, including normal range of motion and strength, in the upper and lower extremities, bilaterally. Plaintiff was assessed with a migraine headache, depression, and GERD. Dr. Jones added a delayed release Nexium to Plaintiff's medication regimen.

On July 12, 2019, Plaintiff underwent a MRI of the cervical spine that revealed mild degenerative change involving the cervical spine without disc herniations. (Tr. 568, 658-659). No high grade central canal or neural foraminal stenosis were identified.

On July 18, 2019, Plaintiff was seen by Dr. Baker for a CESI. (Tr. 587-588). Dr. Baker noted Plaintiff complained of severe, radiating neck pain that was non-responsive to conservative therapy. Plaintiff reported the pain impacted his ability to perform activities of daily living and his overall quality of life. Plaintiff tolerated the procedure well. Plaintiff was instructed to maintain a pain diary. Dr. Baker noted if Plaintiff experienced more than 50% pain relief with this injection, Plaintiff would be eligible to receive a future injection.

On August 1, 2019, Plaintiff was seen by Dr. Baker for a second CESI which was well-tolerated. (Tr. 589-590). Plaintiff reported more than 50% pain relief from his radicular neck pain

after the first injection. Plaintiff indicated that while he continued to have uncontrolled radicular neck pain, his pain was more manageable with the current medications. Plaintiff denied complications after the first injection and reported improvement in tolerance for some of the physical activities which generally aggravated his pain. Plaintiff tolerated the procedure well.

On August 14, 2019, Plaintiff was seen at the Gravette Clinic for sinus congestion. (Tr. 612-617). Plaintiff denied shortness of breath, fevers, chills, or chest pain. Dr. Kannam noted Plaintiff's blood pressure was elevated. Plaintiff reported he started seeing Dr. Holden for his anxiety and depression, and Dr. Holden made helpful adjustments to his medications. Plaintiff had no other acute concerns. After examination, Dr. Kannam assessed Plaintiff with acute bronchitis, chronic depression, cervical radiculopathy, chronic neck pain, and essential hypertension. Plaintiff was prescribed medication, and instructed to follow-up with Dr. Holden for his anxiety and depression.

On August 15, 2019, Plaintiff was seen by Stacie Smith, PA, for neck and knee pain. (Tr. 575-578). Plaintiff reported his neck pain radiated into both upper extremities. Plaintiff reported that the CESIs had worked well for him, he had not needed to take pain medication, and he could perform the activities of daily living. Upon examination, PA Smith noted Plaintiff's gait was antalgic and that Plaintiff used a cane. Plaintiff was oriented to person, place, and time; and had normal recent and remote memory. PA Smith recommended the continuation of his current medications as Plaintiff reported pain relief, without medication side effects as well as improvement in function and quality of life. PA Smith opined Plaintiff was doing well.

On August 23, 2019, Plaintiff was seen in the Gravette Clinic. (Tr. 642-647) Dr. Jones noted Plaintiff was applying for disability and brought in paperwork to be completed. Upon examination, Dr. Jones documented Plaintiff experienced neck and knee pain, and ambulated with

a cane. Plaintiff had a normal neurological examination and was oriented to person, place, and time. Dr. Jones assessed Plaintiff with osteoarthritis of the knee and neck pain. Plaintiff was to return in three months.

On August 23, 2019, Dr. Jones completed a Physical Exertions Limitations Form opining that Plaintiff could perform sedentary work. (Tr. 562-563). Sedentary work was defined as:

> involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties; defined at least 2 hours of an 8 hour work day.

(Tr. 562). Dr. Jones also completed a Physical Residual Functional Capacity Assessment opining that Plaintiff could not sit/stand/walk in combination for 8 hours during an 8-hour workday; and that Plaintiff had significant limitations in the ability to reach/push/pull bilaterally in the upper extremities. (Tr. 563-564).

On the same date, Dr. Jones completed a Physical Medical Source Statement opining that, as of May 2, 2019, Plaintiff could frequently lift and carry 10 pounds; could occasionally lift and carry 10 pounds; could stand and/or walk a total of 2 hours in as 8-hour workday, and continuously for 30 minutes; could sit for a total of 6 hours in an 8-hour workday; and had a limited ability to push and/or pull with the upper and lower extremities. (Tr. 565-567). Dr. Jones opined Plaintiff would need three to four breaks in an 8-hour workday. Dr. Jones opined Plaintiff could climb, balance, squat, kneel, crouch, bend, and stoop less than one-third of a workday; could reach in all directions one-third to two-thirds of a workday; and could handle, finger, grip, and feel two-thirds of a workday.

On September 19, 2019, Plaintiff was seen by PA Smith for a follow-up for his neck, arm, knee, and shoulder pain. (Tr. 580-584). On average, Plaintiff rated his pain a seven out of ten.

Plaintiff reported his pain flared for no specific reason; and that he experienced some relief with rest, medication, lying down, sitting, and injections. Plaintiff requested another injection, noting that he rarely needed pain pills due to the pain relief experienced from the injections. Upon examination, PA Smith noted Plaintiff had an antalgic gait and that he used a cane. Plaintiff was oriented to person, place, and time and had normal recent and remote memory. Plaintiff reported over 50% pain relief with the previous injections. Plaintiff also reported improvement in the tolerance of activities which previously caused pain.

On September 30, 2019, Plaintiff was seen at the Gravette Clinic for a follow-up by Dr. Donnie Holden. (Tr. 691-692). Plaintiff complained of a major depressive disorder, dysthymia, and pain with psychological factors. Dr. Holden noted Plaintiff's treatment consisted of medication and individual psychotherapy. Dr. Holden indicated Plaintiff's depression was responding to treatment. Plaintiff was to return in three months.

On October 3, 2019, Plaintiff was seen by Dr. Baker for another CESI which was well-tolerated. (Tr. 585-586). Plaintiff reported a 50-60% improvement in his radicular pain after the second CESI and indicated that while his pain was more manageable, he continued to have significant radicular pain. Plaintiff also reported further improvement in tolerance with some physical activities which generally aggravated his pain.

On October 16, 2019, Plaintiff went to the Gravette Clinic to request a prescription for a four-pronged cane. (Tr. 636-641, 687). Plaintiff reported several recent falls, despite the use of a regular cane. Dr. Jones noted Plaintiff had a history of osteoarthritis and hypertension. Plaintiff reported he was having a lot of problems with his knees, to include falling.  After examining Plaintiff, Dr. Jones assessed Plaintiff with essential hypertension and osteoarthritis of the left knee

9

joint. Plaintiff was prescribed medication and a four-pronged cane, and referred for an orthopedic consultation.

On October 24, 2019, Plaintiff was seen in the Gravette Clinic by Dr. Christopher Dougherty, for a consultation regarding knee pain. (Tr. 633-635). Plaintiff reported right knee pain with swelling, popping, and locking symptoms. Upon examination, Dr. Dougherty noted Plaintiff had an antalgic gait but noted Plaintiff ambulated with no assistive devices. Dr. Dougherty opined Plaintiff's left knee had meniscus tears and an ACL tear, while his right knee had a meniscus tear. Plaintiff was curiously noted to have failed prior physical therapy and injections, so a MRI of the left knee was recommended. Plaintiff was found to have a normal mood and affect. Plaintiff was to follow-up with Dr. Dougherty on November 22, 2019.

On November 5, 2019, Plaintiff was seen by PA Smith for neck and knee pain. (Tr. 675-679). Plaintiff reported the CESI gave him more than 60% pain relief with improvement in movement without pain. Plaintiff reported he took pain medication mainly for his knees since he had started walking to lose weight. PA Smith noted Plaintiff was seeing an orthopedic surgeon for his knees. An examination of Plaintiff revealed he had an antalgic gait and station, and used a cane. Plaintiff was prescribed a medication refill and scheduled to return in two months.

On November 12, 2019, Plaintiff underwent a MRI of the left knee that revealed mild central free edge fraying of the anterior horn and body medial meniscus; heterogeneous signal within the distal ACL with otherwise intact fibers likely representing a sequela of remote injury; and mild compartmental chondromalacia. (Tr. 689-690).

### III. Applicable Law:

The Court reviews "the ALJ's decision to deny disability insurance benefits *de novo* to ensure that there was no legal error that the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin,* 825 F. 3d 936, 939 (8th Cir. 2016). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Lawson v. Colvin*, 807 F.3d 962, 964 (8th Cir. 2015). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental impairment that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

**IV.   Discussion:**

Plaintiff argues the following issues on appeal: 1) the ALJ erred in determining Plaintiff's RFC; and 2) the ALJ erred in not giving greater weight to the opinion evidence of Plaintiff's treating physicians.

**A.   Subjective Complaints and Symptom Evaluation:**

We first address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may

discount those complaints where inconsistencies appear in the record as a whole. *Id*. "Assessing and resolving credibility is a matter properly within the purview of the ALJ." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). After reviewing the administrative record, the Court finds the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the *Polaski* factors.

With respect to Plaintiff's daily activities, a review of the record revealed that, during the time period in question, Plaintiff was able to take care of his personal needs, noting clothing needed to be button free; to take care of his pet, to include feeding, combing, and bathing as needed; to prepare simple meals; to help with light household chores; to drive; to go to the food pantry with his father almost daily; and to watch movies and football, and play online video games, noting a decrease in playing time and ability. Plaintiff indicated he infrequently socialized, but reported this was due to not having his own vehicle.

With respect to Plaintiff's alleged physical impairments, a review of the record revealed that most of Plaintiff's impairments were treated conservatively. *See Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). As detailed by the ALJ, the record revealed that Plaintiff's neck pain was reduced by at least 60% after undergoing CESIs and Plaintiff reported on more than one occasion that his headaches were effectively managed with medication. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)(impairments that are controllable or amenable to treatment do not support a finding of total disability). The ALJ also considered the evidence regarding Plaintiff's knees, including Plaintiff's need to use a cane when determining his capabilities.

With respect to alleged mental impairments, the ALJ noted Plaintiff's medical providers routinely found Plaintiff to have a normal psychological examination. The record includes one

13

progress note from Dr. Holden, a mental health provider, dated September 30, 2019, indicating Plaintiff was responding well to treatment. The Court notes that Dr. Holden also indicated Plaintiff's mental health treatment consisted of both individual therapy and medication management; however, the record contains no indication that Plaintiff attended therapy as prescribed. After reviewing the record as a whole, the Court finds substantial evidence to support the ALJ's determination that Plaintiff did not have a disabling mental impairment during the time period in question.

Although it is clear Plaintiff suffers with some degree of limitation, he has not established that he was unable to engage in any gainful activity during the relevant time period. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### B. The ALJ's RFC Determination and Medical Opinions:

Plaintiff argues the ALJ improperly discounted the opinions of Drs. Tucker and Jones, two of Plaintiff's treating physicians, when determining Plaintiff's RFC.

For disability claims filed on or after March 27, 2017, an ALJ evaluates medical opinions pursuant to 20 C.F.R. § 404.1520c. These rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to consider the persuasiveness of any opinion or prior administrative medical finding using the same five factors: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with

the claimant, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c). The rules, however, make clear that supportability and consistency are the "most important factors" and therefore, an ALJ must explain how he considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2).

Plaintiff filed for disability insurance benefits on October 8, 2018; and thus, the new medical evidence regulations were properly applied. These new regulations did away with the treating physician rule on which Plaintiff heavily relies. *Fledhaus v. Saul*, No. 4:19-CV-2249-SPM, 2020 WL 5594062, at *5 n.1 (E.D. Mo. Sept. 18, 2020)("For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated.")(citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). With this in mind, the Court addresses the ALJ's determination regarding the opinions of Drs. Tucker and Jones.

In an undated letter received by the Administration in July of 2019, Dr. Tucker wrote a two-sentence letter wherein he stated Plaintiff was "incapable of performing work related functions" The ALJ determined that this statement was not a function-by-function assessment of Plaintiff's capabilities, and contained no medical opinion. *See* 20 C.F.R. § 404.1527 (d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner…"). The Court finds the ALJ did not err in determining that the persuasiveness of Dr. Tucker's conclusory and unsupported statement was not warranted in this instance. *See* 20 C.F.R. § 404.1527 (d)(1).

With respect to the opinion of Dr. Jones, the record revealed that during the time period in question Plaintiff was seen by Dr. Jones on three occasions: July 3, 2019, August 23, 2019, and October 16, 2019. On July 3, 2019, Plaintiff was seen by Dr. Jones for a follow-up appointment

after being treated in the ER for a migraine headache. Dr. Jones found Plaintiff had a normal musculoskeletal examination including normal range of motion in the upper and lower extremities, bilaterally. During this visit, Dr. Jones assessed Plaintiff with a migraine headache, depression, and GERD.

On August 23, 2019, Plaintiff was seen by Dr. Jones to discuss completing Plaintiff's disability paperwork. At this visit, Dr. Jones noted Plaintiff reported neck and knee pain, and that he ambulated with a cane. After examination, Dr. Jones diagnosed Plaintiff with osteoarthritis of the knee and neck pain and recommended Plaintiff return for a follow-up in three months. Dr. Jones also completed three separate forms during this office visit: 1) a Physical Exertions Limitations Form indicating Plaintiff could perform sedentary work; 2) a Physical Residual Functional Capacity Assessment opining Plaintiff could not sit/stand/walk in combination for 8 hours in an 8-hour day and had significant upper extremity limitations; and 3) a Physical Medical Source Statement. In the Physical Medical Source Statement, Dr. Jones opined Plaintiff could frequently lift and carry 10 pounds; could occasionally lift and carry 10 pounds; could stand and/or walk a total of 2 hours in an 8-hour workday, continuously for 30 minutes; could sit for a total of 6 hours in an 8-hour workday; could climb, balance, squat, kneel, crouch, bend, and stoop less than one-third of a workday; could reach in all directions one-third to two-thirds of a workday; and could handle, finger, grip, and feel two-thirds of a workday.

On October 16, 2019, Plaintiff was last seen by Dr. Jones to request a four-pronged cane to help with his balance. Plaintiff reported recent falls and believed a more stable cane would be more supportive. Dr. Jones reported Plaintiff had a normal musculoskeletal examination, noting the use of a cane to ambulate and prescribing the four-pronged cane as requested.

In applying the new applicable regulations, the ALJ focused on the persuasiveness of Dr. Jones' medical opinion, explicitly discussing its supportability and consistency. 20 C.F.R. § 404.1520c(a)-(c) (in evaluating persuasiveness, ALJ should consider supportability, consistency, relationship with the claimant -- which includes length of the treatment relationship, frequency of examinations, examining relationship, purpose of the treatment relationship, and the extent of the treatment relationship, specialization, and other factors); 20 C.F.R. § 404.1520c(b)(2)(the ALJ was required to explain how she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion). Here, the ALJ determined that Dr. Jones' opinion was "somewhat persuasive," noting Dr. Jones failed to cite to any specific objective findings to support her opinion, other than the Plaintiff suffered from chronic neck and knee pain. The ALJ also found Dr. Jones' opinion was not fully persuasive because it was not supported by her own treatment notes and was inconsistent with the other medical evidence of record. Notably, the ALJ incorporated into Plaintiff's RFC those limitations noted by Dr. Jones which were consistent with the medical evidence as a whole.

The ALJ was required to adopt a RFC based upon the record as a whole. *See Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (stating that "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC;" and that the ALJ does so on the basis of "all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations"). The Court finds the ALJ evaluated all of the medical evidence of record and adequately explained the reasons for the weight given this evidence, including the opinions of Dr. Tucker and Dr. Jones, in a manner consistent with the new

regulations. After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

      C.      **Hypothetical Question to the Vocational Expert:**

The hearing transcript along with the evidence of record, supports the hypothetical posed by the ALJ to the vocational expert as it fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *Goff v. Barnhart,* 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a surveillance system monitor, an inspector, and an addresser. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

      V.      **Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

      DATED this 12th day of August 2021.

      /s/    *Christy Comstock*
      HON. CHRISTY COMSTOCK
      UNITED STATES MAGISTRATE JUDGE